Civil Action No. 2:11 – cv – 248

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
### Charleston Division

**GARY HUDSON**
> **Plaintiff**

vs.

**PINE RIDGE COALCOMPANY, LLC.,**
> **Defendant**

---

**BRIEF OF AMICUS CURIAE**
**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,**
**UNITED STATES DEPARMENT OF LABOR**

---

R. BOOTH GOODWIN II
United States Attorney

By:   /s/ GARY L. CALL
Assistant United States Attorney
WV State Bar No. 589
P.O. Box 1713
Charleston, W. VA. 25326
Tel: 304-345-2200
Fax: 304-347-5440

Of Counsel:   M. PATRICIA SMITH
Solicitor of Labor
RAE ELLEN JAMES
Associate Solicitor
SEAN G. BAJKOWSKI
Counsel for Enforcement
DOMINIQUE V. SINESI
Trial Attorney
U.S. Department of Labor
Office of the Solicitor
Suite N-2117
200 Constitution Ave., NW
Washington, D.C. 20210
(202) 693-5669

Attorneys for the Director, Office of Workers' Compensation Programs

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 1

INTEREST OF AMICUS ................................................................................. 2

LEGAL BACKGROUND ................................................................................ 3

FACTUAL AND PROCEDUARL BACKGROUND................................... 5

LEGAL STANDARDS ..................................................................................... 7

DISCUSSION .................................................................................................... 7

   A.  This Court has jurisdiction of Hudson's complaint under 33 U.S.C. § 921(d) . 7

   B.  Hudson is entitled to the relief requested in his complaint ............................... 11

      1.  Hudson's counsel is entitled to the ALJ's attorney's fee award .................... 11

      2.  Hudson is entitled to an additional 20% of all compensation overdue by
      more than ten days......................................................................................... 12

      3.  National Union is liable for Hudson's reasonable attorney's fees in bringing
      this enforcement action.................................................................................. 15

CONCLUSION ................................................................................................ 17

CERTIFICATE OF SERVICE ................................................................... 18

## TABLE OF AUTHORITIES

**CASES**

*Betty B Coal Co. v. Director, OWCP*, 194 F.3d 491 (4th Cir. 1999) ............................... 9

*Christensen v. Stevedoring Services of Amer.*, 430 F.3d 1032 (9th Cir. 2005)...........12

*Continental Casualty Co. v. Lawson*, 2 F. Supp. 459 (S.D. Fla. 1932)
    *rev'd on other grounds*, 64 F.2d 802 (5th Cir. 1933)…………………………………..14

*Crowe v. Zeigler Coal Co.*, __ F.3d __, 2011 WL 2138140, no. 10-2174
    (7th Cir. June 1, 2011) ................................................................. 10

*Director v. Hileman*, 897 F.2d 1277, 1281 n. 2 (4th Cir. 1990)………………………..3

*Director, OWCP v. National Mines Corp.*, 554 F.2d 1267 (4th Cir. 1977).................... 4

*Donovan v. McKee*, 669 F. Supp. 138 (S.D.W. Va. 1987) ............................................ 15

*GE Investment Private Placement Partners II v. Parker*, 247 F. 3d 543
    (4th Cir. 2001)............................................................................ 7

*Hansen v. Director, OWCP*, 984 F. 2d 364 (10th Cir. 1993) ........................................ 11

*Hanson v. Marine Terminals Corp.*, 307 F.3d 1139 (9th Cir. 2002)......................... 9,14

*Ingalls Shipbuilding v. Dalton*, 119 F.3d 972 (Fed. Cir. 1997)…………………………..6

*Island Creek Coal Co. v. Henline*, 456 F.3d 421 (4th Cir. 2006) .................................. 7

*Kerns v. Consol. Coal Co.*, 176 F.3d 802 (4th Cir. 1999) ........................................... 11

*Kerns v. Consol. Coal Co.*, 247 F.3d 133 (4th Cir. 2001) ........................................... 16

*National Mines Corp. v. Carroll*, 64 F.3d 135 (3d Cir. 1995) ..................................... 10

*Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245
    (4th Cir. 2004) .................................................................... 6,12,16

*Nowlin v. Eastern Associated Coal Corp*, 321 F. Supp.2d 602
    (N.D.W. Va. 2004) ............................................................... 12,15

*O'Keefe v. Aerojet-General Shipyards*, 404 U.S. 254 (1971) ........................................ 9

*Old Ben Coal Co. v. Luker*, 826 F.2d 688 (7th Cir. 1987).......................................... 3,12

*Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680 (1991) .................................................... 7

*Rivere v. Offshore Painting Contractors*, 872 F.2d 1187 (5th Cir. 1989).................14

*Tahara v. Matson Terminals*, 511 F.3d 950 (9th Cir. 2007)................................6

*Tazco, Inc. v. Director, OWCP*, 895 F.2d 949 (4th Cir. 1990)............................1

*Tidelands Marine Serv. v. Patterson*, 719 F.2d 126 (5th Cir. 1983).................14

*Thompson v. Potashnick Constr. Co.*, 812 F.2d 574 (9th Cir. 1987) ............................. 8

*Vincent v. Consolidated Operating Co.*, 17 F.3d 782 (5th Cir. 1994) .......................... 10

*Wells for Use of Rosiello v. Int'l Great Lakes Shipping Co.*, 693 F.2d 663
    (7th Cir. 1982)................................................................................................. 12

*Williams v. Jones*, 11 F.3d 247 (1st Cir. 1993)................................................... 10

**STATUTES**

26 U.S.C. § 9501(d).................................................................................................3
26 U.S.C. § 9501(d)(1)(A),(B)................................................................................3
30 U.S.C. §§ 901-944..............................................................................................2
30 U.S.C. § 901(a) .................................................................................................. 3
30 U.S.C. § 932(a)...............................................................................................1,3
30 U.S.C. § 934..................................................................................................... 11
30 U.S.C. § 934(b)(2)............................................................................................15
30 U.S.C. § 934(b)(4)........................................................................................5, 15
33 U.S.C. § 901-950................................................................................................3
33 U.S.C. § 914(f)..........................................................................................*passim*
33 U.S.C. § 918(a)................................................................................................. 4
33 U.S.C. § 919...................................................................................................... 4
33 U.S.C. § 921...................................................................................................... 4
33 U.S.C. § 921(a)..........................................................................................5,8,13
33 U.S.C. § 921(b)............................................................................................9,14
33 U.S.C. § 921 (b)-(c)......................................................................................... 4
33 U.S.C. § 921(b)(3)........................................................................................5,10
33 U.S.C. § 921(c) ............................................................................................... 10
33 U.S.C. § 921(d).........................................................................................*passim*
33 U.S.C. § 922....................................................................................................9,12
33 U.S.C. § 928(a)...........................................................................................4,6,11
33 U.S.C. § 935.......................................................................................................1

**OTHER AUTHORITIES**

62 Fed. Reg. 3365-3366 (Jan. 22, 1997)..............................................................13

65 Fed. Reg. 80010-11 (Dec. 20, 2000) ................................................................ 12
Secretary's Order No. 10-2009,74 Fed. Reg. 58834-01 (Nov. 13, 2009) ...................... 3
Fed. R. Civ. P. 12(B)(6) ........................................................................................... 7
S. Rep. 95-209, 95th Cong., 1st sess.(1977) ..................................................... 4,12

## REGULATIONS

20 C.F.R. § 725.101(a)(16) ........................................................................ 8
20 C.F.R. § 725.212-225 ............................................................................ 3
20 C.F.R. § 725.310 ........................................................................... 9,12,13
20 C.F.R. § 725.310(a)-(c) ......................................................................... 7
20 C.F.R. § 725.310(b) .............................................................................. 7
20 C.F.R. § 725.310(d) .............................................................................. 9
20 C.F.R. § 725.311(c) ............................................................................... 9
20 C.F.R. § 725.367(a) ............................................................................. 11
20 C.F.R. § 725.367(b) ............................................................................. 11
20 C.F.R. § 725.421 .................................................................................. 4
20 C.F.R. § 725.478 .............................................................................. 8,13
20 C.F.R. § 725.479 ............................................................................... 5,9
20 C.F.R. § 725.479(a) ............................................................................. 9
20 C.F.R. § 725.450 .................................................................................. 4
20 C.F.R. § 725.456 .................................................................................. 4
20 C.F.R. § 725.502 .................................................................................. 5
20 C.F.R. § 725.502(a)(2) ........................................................................ 13
20 C.F.R. § 725.502(b)(1), ....................................................................... 13
20 C.F.R. § 725.502(b)(2), ....................................................................... 13
20 C.F.R. § 725.503(b) .............................................................................. 5
20 C.F.R. § 725.522 ............................................................................... 3,5
20 C.F.R. § 725.601 .................................................................................. 6
20 C.F.R. § 725.603 .................................................................................. 3
20 C.F.R. § 725.604 .................................................................................. 8
20 C.F.R. § 725.605 .................................................................................. 5
20 C.F.R. § 725.607(a) ............................................................................. 12
20 C.F.R. § 725.607(b) ............................................................................. 15
20 C.F.R. § 725.608(a)(3) ......................................................................... 15
20 C.F.R. § 725.608(c) ............................................................................. 12
20 C.F.R. § 725.701 .................................................................................. 3
20 C.F.R. § 726.207 .................................................................................. 1
20 C.F.R. Parts 718, 725, 726 .................................................................... 4

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
(Charleston Division)

| | |
|---|---|
| **GARY HUDSON** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| **vs.** | ) CIVIL ACTION: |
| | ) No. 2:11 - cv - 248 |
| | ) |
| **PINE RIDGE COAL** | ) |
| **COMPANY, LLC.,** | ) |
| | ) |
| **Defendant** | ) |
| | ) |

### BRIEF OF AMICUS CURIAE, DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The Director, Office of Workers' Compensation Programs ("OWCP"), United

States Department of Labor ("DOL" or "the Department"), files this brief in opposition to

Defendant Pine Ridge Coal Company, LLC's ("Pine Ridge's") motion to dismiss.

### INTRODUCTION

In December 2010, an administrative law judge ordered National Union Fire

Insurance Company ("National Union"), Pine Ridge's insurer, to pay federal black lung

benefits to Gary Hudson. The Order is attached as Exhibit "A."[1]  Pine Ridge had 30 days

---

[1] Typically, compensation orders specify that the employer, or the employer and its insurance carrier, are liable for benefits.  Apparently due to an oversight, the ALJ's award in this case specifically ordered only National Union as responsible to pay Hudson's benefits. Ex. A at 10.  Before the ALJ, Pine Ridge did not dispute its identification as the operator liable to pay Hudson's benefits, and it did not raise the issue in its answer or motion to dismiss in this action.  The Director therefore believes the ALJ's order is enforceable against Pine Ridge.  The Court, however, need not address the issue.  On July 1, 2011, Hudson moved to amend his complaint to add National Union as a defendant, and the ALJ's order is directly enforceable against National Union.  Black Lung and Longshore insurers are liable directly, not merely derivatively. *See* 33 U.S.C. § 935, *as incorporated by* 30 U.S.C. § 932(a); 20 C.F.R. § 726.207; *Tazco, Inc. v. Director, OWCP*, 895 F.2d 949, 951-52 (4th Cir. 1990) (A BLBA insurer "is required to discharge the statutory and regulatory duties imposed on the employer, thus stepping into its shoes . . . unlike an indemnification policy, the Black Lung Benefits scheme contemplates that the insurer, as a party, may be liable in the original claims proceeding.") (citations omitted).

1

to ask the ALJ to reconsider the decision or to file an appeal with the Benefits Review Board. It did neither. It also refused to comply with the order, or with the ALJ's subsequent order awarding attorney's fees to Hudson's counsel. Hudson then filed this action under 33 U.S.C. § 921(d), which invests the district courts with the power to enforce final compensation orders. He seeks a judgment ordering Pine Ridge and National Union (hereinafter, collectively "Pine Ridge" unless otherwise specified) to comply with the ALJ's compensation and fee orders, and to pay Hudson an additional 20% of all compensation overdue by more than 10 days as required by 33 U.S.C. § 914(f).

Pine Ridge makes two arguments in support of its motion to dismiss. The first is that the ALJ's compensation order is not final because, in April, Pine Ridge filed a petition to modify it. The second is that it is not liable for an additional 20% of all overdue compensation because Hudson received benefits from the DOL-administered Black Lung Disability Trust Fund. These arguments run counter to the statute, its implementing regulations, and the case law, which make clear (1) that a modification request has no impact on the finality or enforceability of an ALJ award, and (2) that a black lung claimant's right to an additional 20% of overdue compensation is unaffected by the fact that the Trust Fund pays interim benefits on the defaulting employer's behalf. Pine Ridge's motion to dismiss should be denied.

## INTEREST OF AMICUS

As more fully explained in the accompanying Motion for Permission to File Amicus Curiae Brief, the Secretary of Labor has delegated her authority to administer the Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§ 901-944, and the Longshore and

2

Harbor Workers' Compensation Act ("Longshore Act"), 33 U.S.C. §§ 901-950 to the

Director, OWCP.  *See* Secretary's Order No. 10-2009, 74 Fed. Reg. 58834-01 (Nov. 13,

2009).  The Director therefore has an interest in the proper interpretation of those Acts

and their implementing regulations.  The Director also has a duty to protect the assets of

the Black Lung Disability Trust Fund, which has paid and continues to pay black lung

benefits to Hudson as a consequence of National Union's default.  *See, e.g., Director v.*

*Hileman*, 897 F.2d 1277, 1281 n. 2 (4th Cir. 1990) (Director "charged with a fiduciary

duty to protect the Black Lung Disability Trust Fund from unjustified claims").  The

Director therefore has an interest in ensuring that responsibility for Hudson's claim falls

on the properly liable party: National Union.

**LEGAL BACKGROUND:**
**THE FEDERAL BLACK LUNG BENEFITS PROGRAM**

The federal black lung program provides monthly disability benefits to coal

miners who are totally disabled by pneumoconiosis, commonly referred to as black lung

disease. 30 U.S.C. § 901(a).[2]  Primary liability for these benefits rests with coal mine

operators and their insurance carriers.  30 U.S.C. § 932(a), (b).  The DOL-administered

Black Lung Disability Trust Fund, established by 26 U.S.C. § 9501(d), is a statutory

payor of last resort, available to provide benefits if no liable operator is identified or, as

here, where the liable operator defaults on its obligation to pay benefits.  26 U.S.C. §

9501(d)(1)(A), (B); 20 C.F.R. § 725.522, 725.603; *see generally Old Ben Coal Co. v.*

*Luker*, 826 F.2d 688, 693 (7th Cir. 1987) ("Congress intended to 'ensure that individual

coal operators rather than the trust fund bear the liability for claims arising out of such

---

[2] It also provides medical benefits for treatments reasonably necessary to treat a totally disabled miner's
pneumoconiosis and monthly benefits to the dependent survivors of miners who die due to the disease. *See*
20 C.F.R. §§ 725.701; 725.212-225.

3

operators' mines to the maximum extent feasible.'") (quoting S. Rep. 95-209, 95th Cong., 1st Sess. 9 (1977)).

The BLBA incorporates much of the Longshore Act. *See* 30 U.S.C. § 932(a). Among these incorporated Longshore Act provisions are Sections 28(a) (employer or carrier liable for successful claimant's reasonable attorney's fees), 14(f) (claimant entitled to an additional 20% of compensation overdue by more than 10 days ), and 22 (allowing a party to petition for an award to be modified "on the ground of a change in condition or because of a mistake in a determination of fact"), as well as the Longshore Act's hearing, appeal, and enforcement procedures. 33 U.S.C. §§ 928(a), 914(f), 922, 918-19, 921, *as incorporated by* 30 U.S.C. § 932(a). The DOL's power to promulgate regulations implementing the BLBA includes the authority "to depart from specific requirements of the Longshoreman's Act in order to administer the black lung compensation program." *Director, OWCP v. National Mines Corp.*, 554 F.2d 1267, 1274 (4th Cir. 1977); *see* 20 C.F.R. Parts 718, 725, 726 (DOL regulations implementing the BLBA).

District courts do not play a direct role in the adjudication of disputed benefits claims. Claims that are not resolved informally by an OWCP district director are adjudicated before administrative law judges. 33 U.S.C. § 919; 20 C.F.R. §§ 725.421, 725.450, 725.456. ALJ decisions can be appealed to DOL's Benefits Review Board and then to the federal courts of appeals. 33 U.S.C. § 921 (b)-(c). District courts are, however, the backbone of the BLBA's enforcement system. Section 21(d), 33 U.S.C. § 921(d), the statutory basis for Hudson's suit, provides that district courts "shall enforce

4

obedience" to a compensation order "that has become final" and "was made and served in accordance with law" upon a claimant's or DOL's application.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

After working as a coal miner for over 33 years, Gary Hudson filed a claim for federal black lung benefits in May 2008. Ex. A at 2. Pine Ridge disputed the claim, and a formal hearing was held before an administrative law judge. In December 2010, the ALJ found Hudson to be totally disabled by pneumoconiosis arising out of coal mine employment, and ordered National Union, Pine Ridge's insurance carrier, to "pay the miner all the benefits to which he is entitled, augmented by one dependent, beginning as of May 1, 2008."[4] Ex. A at 10. The ALJ's compensation order was served by certified mail on Paul Frampton, counsel for Pine Ridge and National Union, and on National Union itself, and it was filed with OWCP's Division of Coal Mine Workers' Compensation on January 7, 2011. *Id.* at 12, 1.

Because Pine Ridge did not ask the ALJ to reconsider his decision or file an appeal to the Benefits Review Board, the compensation order became final 30 days later on February 8. 33 U.S.C. § 921(a); 20 C.F.R. § 725.479. That same day, OWCP sent a letter to Pine Ridge and National Union calculating the total amount of back benefits owed to Hudson under the ALJ's compensation order for the period from May 2008 –

---

[3] Section 21(d) is one element of the BLBA's three-pronged enforcement scheme. 30 U.S.C. § 934(b)(4) gives DOL the right to bring an enforcement action in district court to recover benefits paid by the Trust Fund on a defaulting employer's or carrier's behalf. 33 U.S.C. § 918(a) gives district courts the power to enforce supplemental orders of default, which are typically issued by OWCP district directors when an employer has failed to comply with an award that the employer has appealed. Section 18(a) is a necessary complement to Section 21(d) because employers and carriers are obligated to pay benefits under "effective" compensation orders before those orders become final and thus enforceable under Section 21(d). *See* 33 U.S.C. § 921(b)(3), (c); 20 C.F.R. §§ 725.502, 725.522, 725.605.

[4] *See* 20 C.F.R. § 725.503(b) ("Benefits are payable to a miner . . . beginning with the month of onset of total disability. . . . Where the evidence does not establish the month of onset, benefits shall be payable . . . beginning with the month during which the claim was filed.").

January 2011 ($30,479.10).  A copy of that calculation letter is attached as Exhibit "B."

On February 16, 2011, the ALJ ordered National Union to pay $13,877.53 in attorney's

fees to Hudson's counsel, Roger Forman.  A copy of the ALJ's attorney's fee order is

attached as Exhibit "C."

Pine Ridge refused, and continues to refuse, to comply with either the

compensation order or the fee order.  Answer ¶¶ 2, 5, 6.  In light of this default, the Black

Lung Disability Trust Fund paid Hudson all benefits due under the compensation order

on Pine Ridge's behalf in April.  Mem. in Supp. of Mot. to Dismiss ("PR Mem.") at 3;

*see* 20 C.F.R. § 725.601.  The Trust Fund has continued to pay monthly benefits to

Hudson.  *Id.*

On April 14, Hudson filed this action, seeking enforcement of the ALJ's

compensation and attorney's fee orders, the statutory 20% penalty[5] on benefits overdue

by more than 10 days, interest on the fee award and penalty amounts, and attorney's fees

and costs for pursuing this action.  *Compl.* ¶¶ 1, 5-7.  On April 18, Pine Ridge filed a

petition to modify the ALJ's compensation order, alleging that the ALJ's findings "are

---

[5] The additional 20% attaching to compensation overdue by more than 10 days under Section 14(f) is not, technically speaking, a penalty.  *See Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245, 250 (4th Cir. 2004) (explaining that section 914(f) does not use the term 'penalty' or 'fine' and, unlike the nine other sections of the Longshore Act that do use those terms, provides for a payment to the claimant rather than to a DOL-administered fund); *Ingalls Shipbuilding v. Dalton*, 119 F.3d 972, 977-80 (Fed. Cir. 1997) (same); *Tahara v. Matson Terminals*, 511 F.3d 950, 953-54 (9th Cir. 2007) (same).  One consequence of this distinction is that a claimant who successfully pursues 914(f) compensation is entitled to an attorney's fee award under 33 U.S.C. § 928(a), which applies when an employer fails to pay "compensation."  Section 14(f) compensation is nevertheless frequently referred to as a "penalty" to "conveniently distinguish [it] from the underlying award."  *Ingalls Shipbuilding v. Dalton*, 119 F.3d at 878-79.  Both Hudson and Pine Ridge follow that convention.  Except when referring to their pleadings, this brief generally refers to this amount as "Section 14(f) compensation."

6

mistaken in several important respects[.]" Petition for Modification at 2 (attached to Pine

Ridge's Motion to Dismiss as Ex. 1).  That petition remains pending.[6]

        On May 24, Pine Ridge filed a motion to dismiss Hudson's action, arguing (1)

that this Court lacks jurisdiction pursuant to 33 U.S.C. § 921(d) because Pine Ridge's

petition for modification renders the ALJ's compensation order non-final and (2) that

Hudson is not entitled to the 20 percent penalty because he received interim benefits

payments from the Trust Fund.  Mot. to Dismiss ¶¶ 2, 4.

**LEGAL STANDARDS**

        "On a Rule 12(b)(6) motion to dismiss, a court must accept the factual allegations

of the complaint as true and view the complaint in the light most favorable to the

plaintiff."  *GE Investment Private Placement Partners II v. Parker*, 247 F. 3d 543, 548

(4th Cir. 2001).  In considering whether Hudson's complaint is insufficient as a matter of

law, the Director's interpretation of the BLBA and its implementing regulations is

entitled to deference.  *See Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 696 (1991);

*Island Creek Coal Co. v. Henline*, 456 F.3d 421, 426 (4th Cir. 2006).

**DISCUSSION**

A.    **This Court has jurisdiction of Hudson's complaint under 33 U.S.C. § 921(d)**

        A district court's jurisdiction to enforce final compensation awards in Black Lung

and Longshore Act cases arises under Section 21(d) of the Longshore Act, which

provides:

---

[6] Modification proceedings are initiated before an OWCP district director.  20 C.F.R. § 725.310(b).  If the district director is unable to resolve the petition informally, it will be subject to the same procedural rules as Hudson's claim for benefits, *i.e.*, it be referred to an ALJ for a formal hearing, with appeals available to the Board and Fourth Circuit.  20 C.F.R. §§ 725.310(a)-(c).

7

> If any employer or his officers or agents fails to comply with a compensation order making an award, that has become final, any beneficiary of such award . . . may apply for the enforcement of the order to the Federal district court for the judicial district in which the injury occurred. . . . If the court determines that the order was made and served in accordance with law, and that such employer or his officers or agents have failed to comply therewith, the court shall enforce obedience to the order[.]

33 U.S.C. § 921(d). *See also* 20 C.F.R. § 725.604. In a Section 21(d) action, "the district court has no jurisdiction over the merits of the litigation" and "cannot affirm, modify, suspend, or set aside the [ALJ's] order." *Thompson v. Potashnick Constr. Co.*, 812 F.2d 574, 576 (9th Cir. 1987). The court has jurisdiction only "to enforce an order made and served in accordance with law if the employer has failed to comply." *Id.*

Pine Ridge candidly admits that it has not obeyed the ALJ's compensation order and does not dispute that the order was made and served in accordance with law.[7] Answer ¶¶ 2, 5, 6. Pine Ridge argues only that the order is not final because of its modification petition. The finality of compensation orders is governed by Section 21(a) of the Longshore Act, which provides:

> A compensation order shall become effective when filed in the office of the deputy commissioner . . . and, unless proceedings for the suspension or setting aside of such order are instituted as provided in subdivision (b) of this section, shall become final at the expiration of the thirtieth day thereafter.

33 U.S.C. § 921(a). The ALJ's compensation order became effective on January 7, 2011.[8] The "proceedings . . . provided in subdivision (b)" are appeals to the Benefits

---

[7] An ALJ order must be served on the parties by certified mail and filed with the DOL. 20 C.F.R. § 725.478. Proper service on the parties is evident from the service sheet, and service of the order on DOL from the stamp indicating its receipt on January 7, 2011. Ex. A at 12, 1.

[8] "Deputy commissioners" are now referred to as "district directors." 20 C.F.R. § 725.101(a)(16). An ALJ's order "shall be considered to be filed in the office of the district director, and shall become effective" on the date it is received by the Division of Coal Mine Workers' Compensation. 20 C.F.R. § 725.478.

Review Board. 33 U.S.C. § 921(b). Pine Ridge filed no such appeal. Section 21(a)'s

implementing regulation provides that this 30-day period to appeal to the Board is

suspended if a party files a motion for reconsideration with the ALJ within that period.

20 C.F.R. § 725.479. But Pine Ridge did not request reconsideration. Under the plain

language of the statute and its implementing regulation, the ALJ's award became final on

February 8.[9] It is therefore enforceable under 33 U.S.C. § 921(d).

    Pine Ridge argues that the compensation order is not final because it has filed a

petition for modification. Pine Ridge unquestionably has the right to file such a petition.

*See* 33 U.S.C. § 922; 20 C.F.R. § 725.310. Modification is an "extraordinarily broad"

remedy, *Betty B Coal Co. v. Director, OWCP*, 194 F.3d 491, 497 (4th Cir. 1999), that

allows the fact finder to correct mistakes "whether demonstrated by new evidence,

cumulative evidence, or merely further reflection on the evidence initially submitted."

*O'Keefe v. Aerojet-General Shipyards*, 404 U.S. 254, 256 (1971).[10] But a petition for

modification "is not the same as a motion for reconsideration" and it is certainly not the

same thing as an appeal to the Board. *Hansen v. Director, OWCP*, 984 F. 2d 364, 367

(10th Cir. 1993). It therefore has no effect on the finality of the ALJ's compensation

order under 20 C.F.R. § 725.479.

    Pine Ridge cites no authority in support of its claim that a petition for

modification renders a compensation order non-final or in any way unenforceable. Nor

---

[9] Because February 6, 30 calendar days from January 7, fell on a Sunday, the parties had until Monday, February 7, to file an appeal or request reconsideration of the ALJ's order. 20 C.F.R. § 725.311(c). The order became final "at the expiration of" the 7th, *i.e.*, on the 8th. 20 C.F.R. § 725.479(a).

[10] Pine Ridge argues that enforcement of the ALJ's order is premature because, as a result of its modification petition, "the award of benefits may be overturned and Pine Ridge will owe no benefits to the claimant at all." PR Mem. at 4. This is not true. Modification is a broad remedy, but not an unlimited one. Even if the compensation order is terminated, Hudson would not be obligated to repay benefits for periods prior to April 18, 2011, the date on which Pine Ridge requested modification. 20 C.F.R. § 725.310(d).

could it, because every court to consider the notion has rejected it.  For example, in

*Vincent v. Consolidated Operating Co.*, 17 F.3d 782 (5th Cir. 1994), an employer and its

insurer argued "that the district court lacked jurisdiction to entertain the plaintiff's [33

U.S.C. § 921(d)] lawsuit" because they had filed a petition to modify the ALJ's

compensation order.  *Id.* at 785-86.  The Fifth Circuit disagreed and affirmed the district

court's judgment enforcing the compensation order.  *Id.* at 786.  When faced with the

same question, the First Circuit similarly concluded "that the LHWCA divests the district

court of the equitable power to defer its entry of a section 921(d) enforcement order

pending the outcome of a section 922 modification proceeding unless the employer first

establishes 'irreparable injury.'"  *Williams v. Jones*, 11 F.3d 247, 259 (1st Cir. 1993).[11]

*See also National Mines Corp. v. Carroll*, 64 F.3d 135, 141 (3d Cir. 1995) ("[A]s the

DOL points out in its brief, 'as a general rule, the mere existence of modification

proceedings does not affect the finality of an existing award of compensation.'"); *Crowe

v. Zeigler Coal Co.*, __ F.3d __, 2011 WL 2138140, no. 10-2174 (7th Cir. June 1, 2011)

("The pendency of a modification petition does not affect the finality of an award.")

(Hamilton, J., concurring).

   Pine Ridge's petition for modification has no effect on the finality or

enforceability of the ALJ's compensation order.  This Court accordingly has jurisdiction

over Hudson's suit under 33 U.S.C. § 921(d).

---

[11] The *Williams* court's "irreparable injury" exception is derived from 33 U.S.C. §§ 921(b)(3), (c), which provide that "[t]he payment of the amounts required by an award shall not be stayed [pending appeal to the Board or court of appeals, respectively] unless ordered by the [Board or court].  No stay shall be issued unless irreparable injury would otherwise ensue to the employer or carrier."  It is not clear that this exception, designed to allow for stays when an employer or carrier timely appeals an effective but non-final award, is available to an employer or carrier that allows an order to become final.  That question, however, is not relevant to this case, because National Union cannot plausibly claim to satisfy the statute's demanding standard for "irreparable injury."  *See* n.14, *infra*.

10

**B. Hudson is entitled to the relief requested in his complaint**

Because the ALJ's order, made and served in accordance with law, is now final, Hudson is entitled to an order enforcing all rights flowing from it. 33 U.S.C. § 921(d) (The court "shall enforce obedience to the order by writ of injunction or by other proper process."). Most obviously, this includes Pine Ridge's obligation to pay future monthly benefits to Hudson.[12] But it includes all of the relief Hudson seeks in his complaint: (1) enforcement of the ALJ's attorney's fee award, with interest; (2) enforcement of his right to an additional 20% of all compensation overdue by more than ten days, with interest; and (3) an award of reasonable attorney's fees for his counsel's efforts in bringing this lawsuit.

**1.   Hudson's counsel is entitled to the ALJ's attorney's fee award**

Counsel for a successful BLBA claimant is entitled to an award of reasonable attorney's fees payable by the liable operator or its insurer. 20 C.F.R. § 725.367(a); 33 U.S.C. § 928(a); *Kerns v. Consol. Coal Co.*, 176 F.3d 802, 804 (4th Cir. 1999). "The operator . . . shall pay such fee promptly and directly to the claimant's attorney in a lump sum after the award of benefits becomes final." 20 C.F.R. § 725.367(b). As demonstrated in the preceding section, Hudson's benefits award became final on February 8, and Pine Ridge did not separately appeal the ALJ's attorney's fee order. National Union is therefore obligated to pay the awarded fees to Hudson's counsel, an obligation properly enforced under 33 U.S.C. § 921(d), which provides the "machinery for judicial enforcement of attorney fee awards[.]" *Wells for Use of Rosiello v. Int'l*

---

[12] Pine Ridge no longer owes Hudson monthly benefits for the period from May 2008 – May 2011, because the Trust Fund paid those benefits on Pine Ridge's behalf. However, Pine Ridge is obligated to reimburse the Trust Fund for these payments. *See* 30 U.S.C. § 934.

*Great Lakes Shipping Co.*, 693 F.2d 663, 665 (7th Cir. 1982) (Posner, J.); *accord*

*Christensen v. Stevedoring Services of Amer.*, 430 F.3d 1032 (9th Cir. 2005). Hudson's

counsel is also entitled to interest on the fee award. 20 C.F.R. §725.608(c).

> **2. Hudson is entitled to an additional 20% of all compensation overdue by more than ten days**

Section 14(f) of the Longshore Act provides, in relevant part:

> **Additional compensation for overdue installment payments payable under terms of award**
>
> If any compensation, payable under the terms of an award, is not paid within ten days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20 per centum thereof, which shall be paid at the same time as, but in addition to, such compensation[.]

33 U.S.C. § 914(f); *see also* 20 C.F.R. § 725.607(a) (implementing Section 14(f). In both

Longshore Act and BLBA cases, Section 14(f) "encourages employers to provide prompt

payment of compensation to injured workers" and "compensate[s] claimants for their

inconvenience and expense during the time when they did not receive timely

compensation." *Newport News Shipbuilding*, 376 F.3d 245, 250 (quotations omitted). In

those BLBA cases where the claimant receives interim benefit payments from the Trust

Fund on the employer's behalf, such as this one, Section 14(f) serves the additional

purpose of "ensur[ing] that individual coal operators rather than the trust fund bear the

liability for claims arising out of such operators' mines to the maximum extent feasible."

*Old Ben Coal Co.*, 826 F.2d 688, 693 (7th Cir. 1987) (quoting S. Rep. 95-209, 95th

Cong., 1st Sess. 9 (1977)); *see also* 65 Fed. Reg. 80010-11 (Dec. 20, 2000) (DOL

preamble to BLBA regulations, explaining Section 14(f)'s role in protecting claimants

and the Trust Fund); *Nowlin v. Eastern Associated Coal Corp*, 321 F. Supp.2d 602, 476

(N.D.W. Va. 2004) (Section 14(f) "has a residual compensatory function despite the existence of the Trust Fund, for it can compel operators to curb their appeals and give meritorious claims finality. Moreover . . . the public is served by placing the risk of non-collection of overpayments on the coal mine operator rather than on the Trust Fund.").

The date compensation "becomes due" for purposes of Section 14(f) is not tied to the date an award becomes final but rather to the date it becomes "effective." The ALJ award became "effective" when it was filed with the district director on January 7, 2011. 33 U.S.C. § 921(a); 20 C.F.R §§ 725.478, 725.502(a)(2). Pine Ridge was immediately liable for monthly benefits for January, and for every month thereafter. 20 C.F.R. § 725.502(b)(1). Because monthly benefits are due by the 15th day of the following month, Hudson's January 2011 benefits were due on February 15. *Id.* When that payment was not made by the 25th, Pine Ridge incurred liability for 20% additional compensation for the January payment. It has subsequently incurred liability for an additional 20% of Hudson's February-May benefits on the 25th day of each following month.

Pine Ridge is also liable for an additional 20% of all benefits awarded for May 2008 – December 2010. Benefits "for periods prior to the effective date of the order" – here, January 7, 2011 – are "due" 30 days after the district director issues a computation of those benefits. 20 C.F.R. § 725.502(b)(2).[13] Because the computation in this case was

---

[13] This computation is necessary because, unlike ongoing monthly benefits, the amount of back benefits owed is generally not apparent from the face of an ALJ award. For example, claimants may have been paid interim benefits from the Trust Fund during some or all of the litigation, in which case some or all of the back benefits must be repaid to the Trust Fund rather than the claimant. *See generally* 62 Fed. Reg. 3365-3366 (Jan. 22, 1997).

issued on February 8, 2011, Hudson's back benefits were due by March 10.   The 20%

penalty attached when those back benefits had not been paid ten days later.

Section 14(f) "is self-executing; the 20 percent additional compensation

automatically becomes due immediately upon the expiration of the ten-day period

following the filing of the compensation order with the [district director.]" *Tidelands*

*Marine Serv. v. Patterson*, 719 F.2d 126, 128 n.2 (5th Cir. 1983).  It is also "mandatory;

the statute does not allow for the consideration of equitable factors." *Hanson v. Marine*

*Terminals Corp.*, 307 F.3d 1139, 1141 (9th Cir. 2002) (collecting cases).

There is only one exception, which does not apply here.  Section 14(f)

compensation does not accrue if "review of the compensation order making such award is

had as provided in Section 921 of this title" – *i.e.* the order is timely appealed to the

Benefits Review Board or Court of Appeals – "<u>and</u> an order staying payment has been

issued by the Board or court." 33 U.S.C. § 914(f) (emphasis added).  The exception is

inapplicable because Pine Ridge did not appeal the ALJ's award to the Board.[14]

---

[14] Even if it had appealed to the Board, Pine Ridge could not reasonably have hoped to secure a stay of its obligation to pay.  "No stay shall be issued unless irreparable injury would otherwise ensure to the employer or carrier." 33 U.S.C. § 921(b).  "Irreparable injury" is, in this context, a demanding standard. As the Fifth Circuit cogently explained:

> The standard raised in *Continental Casualty Co. v. Lawson*, 2 F. Supp. 459, 461 (S.D. Fla. 1932) *rev'd on other grounds*, 64 F.2d 802 (5th Cir. 1933), has stood the test of time and the resistance of employers and insurers.  Irreparable injury is demonstrated only when 'the compensation award may be too heavy for the employer [or insurer] to pay without practically taking all his property or rendering him incapable of carrying on his business, or . . . by reason of age, sickness, or other circumstances [of the payer], a condition is created which would amount to irreparable injury.'  The *Lawson* court would not accept the impossibility of recoupment of the sums paid as the bellwether for irreparable injury.  Nor do we.

*Rivere v. Offshore Painting Contractors*, 872 F.2d 1187, 1191 (5th Cir. 1989) (alterations in original).

14

Pine Ridge asks this Court to craft an additional exception, arguing that Hudson is not entitled to Section 14(f) compensation because the Black Lung Disability Trust Fund "commenced interim payments" to Hudson in April.  PR Mem. at 4.  Pine Ridge neglects to mention that the Trust Fund made those payments only after Pine Ridge announced its intention to defy the ALJ's final order.  This creative attempt to capitalize on its own default is fatally undermined by 20 C.F.R. § 725.607(b) ("If, on account of an operator's . . . failure to pay benefits . . . payments are made by the fund, the eligible claimant shall nevertheless be entitled to receive such additional compensation to which he . . . may be eligible under . . . this section, with respect to all amounts paid by the fund on behalf of such operator[.]"); *see also Nowlin*, 311 F. Supp.2d at 474 (The regulation's "unambiguous language disposes of any assertion that the twenty-percent penalty was not intended to apply wherever the Trust Fund makes payments on the operator's behalf."); *Donovan v. McKee*, 669 F. Supp. 138, 140-41 (S.D.W. Va. 1987) (awarding claimant 20% additional compensation despite interim benefit payments by Trust Fund), *aff'd*, 845 F.2d 70 (4th Cir. 1988).[15]

Pine Ridge failed to pay compensation it owed Hudson within 10 days after it became due.  As a result, Hudson is entitled to an additional 20% of all overdue payments.  He is also entitled to interest on this additional compensation.  20 C.F.R. § 725.608(a)(3).

### 3. National Union is liable for Hudson's reasonable attorney's fees in bringing this enforcement action.

---

[15] While having no impact on Hudson's right to additional compensation in this case, the Trust Fund's payments to Hudson on Pine Ridge's behalf do have legal consequences.  Most notably, "a lien in favor of the United States" for the amount of those payments, plus interest, has already attached to "all property and rights to property, whether real or personal, belonging to" Pine Ridge.  30 U.S.C. § 934(b)(2).  If Pine Ridge and National Union continue to resist payment, that lien can and will be enforced by the DOL in a separate action.  30 U.S.C. § 934(b)(4).

If the Court enforces Hudson's right to additional compensation under Section 14(f), and his attorney's right to the fees awarded by the ALJ, the Court should also order National Union to pay Hudson's attorney a reasonable fee for his efforts in bringing this enforcement action. *See Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245, 250 (4th Cir. 2004) ("an employee who successfully prosecutes a §14(f) claim for late payment is entitled to attorney's fees under § 28"); *Kerns v. Consol. Coal Co.*, 247 F.3d 133, 134 (4th Cir. 2001) ("§ 928(a) should also compensate for time spent pursuing attorney fees. . . so that fees awarded under the statute are not diminished by the cost of bringing a legitimate petition for attorney fees.").

## CONCLUSION

For all the aforementioned reasons, Pine Ridge's motion to dismiss should be denied.

Respectfully Submitted,

R. BOOTH GOODWIN II
United States Attorney

By:     /s/ GARY L. CALL
        Assistant United States Attorney
        WV State Bar No. 589
        P.O. Box 1713
        Charleston, W. VA. 25326
        Tel: 304-345-2200
        Fax: 304-347-5440
        E-mail: gary.call@usdoj.gov

Of Counsel:     M. PATRICIA SMITH
                Solicitor of Labor
                RAE ELLEN JAMES
                Associate Solicitor
                SEAN G. BAJKOWSKI
                Counsel for Enforcement
                DOMINIQUE V. SINESI
                Trial Attorney

                U.S. Department of Labor
                Office of the Solicitor
                Suite N-2117
                200 Constitution Ave., NW
                Washington, D.C. 20210
                (202) 693-5669
                E-mail: sinesi.dominique@dol.gov
                Attorneys for the Director, Office of
                Workers' Compensation Programs

17

## CERTIFICATE OF SERVICE

I certify that today I filed the AMICUS BRIEF of the Director, Office of Workers'

Compensation Programs, United States Department of Labor in Support of the Plaintiff's

Opposition to Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) by using the

CM/ECF system and served copies on the following persons and entities in the manner

noted below:

**CM/ECF NOTIFICATION AND FIRST CLASS MAIL**:

Roger D. Forman
Law Office of Roger D. Forman
Suite 400
100 Capitol Street,
Charleston, WV 25301

Paul E. Frampton
Bowles Rice McDavid Graff & Love
PO Box 1386
Charleston, WV 25325-1386

/s/  GARY L. CALL

Dated: July 5, 2011

# EXHIBIT A

**U.S. Department of Labor**

Office of Administrative Law Judges
William S. Moorhead Federal Office Building
1000 Liberty Avenue, Suite 1800
Pittsburgh, PA 15222



(412) 644-5754
(412) 644-5005 (FAX)

CASE NO.:   2009-BLA-5388

**Issue Date: 28 December 2010**

In the Matter of:

GARY HUDSON
Claimant

v.

PINE RIDGE COAL COMPANY
Employer

and

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA
Carrier

and

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS
Party in Interest

APPEARANCES:

Roger D. Foreman, Esq.
For the Claimant

Paul E. Frampton, Esq.
For the Employer/Carrier

Before:   DANIEL L. LELAND
Administrative Law Judge

## DECISION AND ORDER - AWARDING BENEFITS

This proceeding arises from a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq.  In accordance with the Act and the pertinent regulations, this case was

)                                              )

referred to the Office of Administrative Law Judges by the Director, Office of Workers' Compensation Programs for a formal hearing.

Benefits under the Act are awarded to persons who are totally disabled within the meaning of the Act due to pneumoconiosis or to the survivors of persons whose death was caused by pneumoconiosis. Pneumoconiosis is a dust disease of the lungs arising from coal mine employment and is commonly known as black lung.

A formal hearing was held in Charleston, West Virginia on August 19, 2010 at which all parties were afforded full opportunity to present evidence and argument, as provided in the Act and the regulations found in Title 20 Code of Federal Regulations. Regulation section numbers mentioned in this Decision and Order refer to sections of that Title. At the hearing, Director's exhibits (DX) 1-27, claimant's exhibits (CX) 1-5, and employer's exhibits (EX) 1-4 were admitted into evidence. The depositions of Dr. David Rosenberg and Dr. George Zaldivar were submitted post hearing and have been made part of the record as EX 5 and EX 6, respectively.

## ISSUES

I.      Existence of pneumoconiosis.

II.     Causal relationship of pneumoconiosis and coal mine employment.

II.     Existence of total disability.

IV.     Causation of total disability.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW [1]

### Procedural History

Gary Hudson (the miner) filed the instant claim for benefits on May 6, 2008. (DX 2). The district director denied the claim on December 2, 2008 and the miner requested a hearing. (DX 21, DX 23). The case was referred to the Office of Administrative Law Judges on January 30, 2009. (DX 25).

### Background

The miner was born on September 15, 1952 and his only dependent is his wife, Teresa. (DX 2, DX 8). The miner's Social Security earnings statement verify that he was engaged in coal mine employment for thirty three and three quarter years beginning in 1972 and ending in 2007. (DX 5). His main job was an electrician at the face and all of his work was performed underground except for the last six years when he was an electrician in the preparation plant. (TR 14, 26). I find that the miner had thirty three years and nine months of coal mine employment of which twenty seven years and nine months were in underground mines. In his

---

[1] The following abbreviations have been used in this opinion: DX=Director's exhibit, CX=claimant's exhibit, EX=employer's exhibit, TR=transcript of hearing, BCR=board certified radiologist, B=B reader.

)                                                    )

last position in the preparation plant the miner dragged or carried motors that weighed several hundred pounds with the help of other miners, and on weekends he changed and carried pipe. (TR 27-29). The miner started smoking cigarettes in 1971, smoked one to one and one half packs a day, and stopped smoking two years ago. (TR 14). He had quadruple bypass surgery in March 2008. (TR 20). The miner testified that he is short of breath and wheezes with exertion. (TR 16).

Medical Evidence

### Chest x-rays

| Exhibit | Date | Physician | Interpretation |
|---------|------|-----------|----------------|
| DX 12 | 6/2/08 | Rasmussen, B | negative for pneumoconiosis |
| DX 12 | 6/2/08 | Gaziano, B | quality 1 |
| DX 13 | 6/2/08 | Wheeler, BCR, B | no evidence of pneumoconiosis |
| DX 13 | 6/2/08 | Scott, BCR, B | no evidence of pneumoconiosis |

### CT Scans

Dr. Scott interpreted an April 23, 2008 CT scan as showing no small opacities to suggest silicosis/CWP. (EX 2). Dr. Wheeler read a September 5, 2008 CT scan as negative for pneumoconiosis. (EX 3). Dr. Cohen interpreted the CT scan of September 5, 2008 as showing posterior eventration of the left hemidiaphragm, cardiomegaly, and scattered opacities between 1.5 and 3 mm in diameter. (EX 1 at 6). Drs. Wheeler and Scott submitted statements attesting that CT scans are valuable diagnostic tools for the detection of pneumoconiosis and other chest disorders. (EX 4).

### Pulmonary Function Studies

| Exhibit | Date | Height | Age | FEV1 | FVC | MVV | FEV1/FVC |
|---------|------|--------|-----|------|-----|-----|----------|
| DX 12 | 6/2/08 | 72 in. | 55 | 2.23 | 2.97 | ---- | 75% |
|  |  |  |  | 2.35* | 2.94* | ---- | 80%* |
| DX 13 | 10/1/08 | 72 in. | 56 | 2.33 | 3.16 | ---- | 74% |
|  |  |  |  | 2.38* | 2.97* | ---- | 80%* |
| CX 1 | 4/17/09 | 72 in. | 56 | 2.34 | 3.25 | ---- | 72% |
|  |  |  |  | 2.33* | 3.08* | ---- | 76%* |

*post bronchodilator

### Blood Gas Studies

| Exhibit | Date | PCO2 | PO2 |
|---------|------|------|-----|
| DX 12 | 6/10/08 | 40 | 84 |
|  |  | 33* | 79* |
| DX 13 | 10/1/08 | 38 | 77 |

)                                                )

*exercise values

Treatment Records

The treatment records of Dr. James Campbell describe Dr. Campbell's treatment of the miner for cardiac disease. (DX 13).

Medical Reports

Dr. D. L. Rasmussen examined the miner on June 2, 2008. (DX 12). Dr. Rasmussen determined that the miner had thirty three years of coal mine employment and that in his last job as an electrician, mechanic, and welder in the preparation plant he did considerable heavy labor. The miner reported that he smoked one pack of cigarettes a day from 1970 to 2006. In the physical examination, the miner's breath sounds were minimally reduced and there were no rales, rhonchi, or wheezes. The chest x-ray was negative for pneumoconiosis, the pulmonary function studies showed a moderate, irreversible restrictive ventilatory impairment, the total lung capacity was minimally reduced, the residual volume was normal, and the diffusing capacity was moderately reduced. Resting and exercise blood gases were normal. Dr. Rasmussen diagnosed chronic bronchitis, restrictive lung disease, and arteriosclerotic heart disease. He attributed the chronic bronchitis to cigarette smoking and coal mine dust exposure and the restrictive lung disease to coal mine dust exposure and cardiac enlargement. Dr. Rasmussen concluded that the miner has a moderate loss of lung function and that he does not retain the pulmonary capacity to perform his regular coal mine job. He stated that the miner has legal pneumoconiosis, i. e., restrictive lung disease and a reduced diffusing capacity caused at least in a minimal but significant part by coal mine dust exposure, and that the miner's coal mine dust exposure is a significant contributor to his disabling lung disease.

The miner was evaluated by Dr. George Zaldivar on October 1, 2008. (DX 13). Dr. Zaldivar credited the miner with thirty four years of coal mine work and determined that in his last job as an electrician in the preparation plant he did a lot of heavy lifting. Dr. Zaldivar recorded a cigarette smoking history of one pack a day from age seventeen or eighteen to March 2008. The miner's lungs were clear to auscultation in the physical examination and his pulmonary function studies showed mild restriction of vital capacity, mild restriction of total lung capacity with no air trapping, and moderate diffusion impairment. Dr. Zaldivar noted that the miner had coronary bypass surgery after a heart attack and that with such surgery there is fifteen percent incidence of damage to the phrenic nerve which may result in paralysis of the left hemidiaphragm. Paralysis of the left diaphragm will cause a restrictive impairment, and approximately five percent of those individuals who develop phrenic nerve damage develop permanent paralysis of the left hemidiaphragm, Dr. Zaldivar maintained. Dr. Zaldivar's findings were: 1) No evidence of coal workers' pneumoconiosis or any dust disease of the lungs;, 2) No legal or medical pneumoconiosis as none of the pulmonary abnormalities noted by Dr. Rasmussen were related to the miner's coal mine dust exposure; 3) The miner's pulmonary impairment is very likely the result of left diaphragmatic paralysis; 4) The miner's shortness of breath is due to severe left ventricular dysfunction compounded by his restrictive impairment brought about by left diaphragmatic paralysis; and 5) The miner is severely impaired from a cardiac standpoint as a result of coronary artery disease and left ventricular dysfunction.

-4-

)                                                    )

Dr. Robert Cohen examined the miner on April 17, 2009. (CX 1). Dr. Cohen found that the miner had smoked cigarettes from age eighteen to age fifty five at the rate of one pack a day. He also determined that the miner had thirty four and three quarters years of coal mine employment and that in his last job he worked as an electrician, pipefitter, and welder and climbed many stairs and carried parts weighing up to fifty pounds on a daily basis. Dr. Cohen noted that the miner had a five vessel coronary bypass surgery on March 27, 2008. The miner's chest was clear to auscultation. The pulmonary function studies demonstrated a moderately severe reduction of the FEV1 with a reduced FVC and normal FEV1/FVC ratio with no significant response to bronchodilators, a reduced total lung capacity, and a moderately reduced diffusion capacity. His resting blood gas test was normal. The pulmonary function studies were consistent with a moderately severe restrictive defect. Dr. Cohen concluded that the miner has coal workers' pneumoconiosis based on: 1) thirty four years of coal mine employment mostly in underground mines; 2) symptoms consistent with chronic lung disease, including cough, sputum production, wheezing, and dyspnea; 3) pulmonary function studies indicating a moderately severe restrictive impairment with a moderate diffusion impairment; 4) opacities on the CT scan of September 5, 2008 which are consistent with coal workers' pneumoconiosis; 5) and the absence of a history of other occupational exposures. Dr. Cohen observed that the miner's history of coronary artery bypass surgery with resultant mild eventration of the left hemidiaphragm is also significantly contributory to his restrictive pulmonary impairment, but that as his CT scan does not show a severely paralyzed hemidiaphragm it would not be expected to be responsible for this degree of restriction. Dr. Cohen also concluded that the pulmonary function and blood gas studies demonstrate that the miner has a moderate obstructive (sic) impairment and a moderate diffusion impairment which renders him disabled from the heavy work he performed as a miner.

Dr. David Rosenberg reviewed the medical evidence in this case and submitted a report dated January 4, 2010. (EX 1). Dr. Rosenberg concluded that the miner does not have clinical pneumoconiosis because his chest x-rays and CT scans do not reveal micronodularity. He stated that the miner has a restrictive pulmonary impairment without airflow obstruction and that his oxygenation is mildly reduced. As the values for the miner's FVC and FEV1 are above sixty percent of predicted, he would not be considered disabled from a pulmonary perspective from performing his previous coal mine job. Dr. Rosenberg also maintained that as the pulmonary function studies do not reveal airflow obstruction and the presence of chronic obstructive lung disease, the miner would not be considered to have legal pneumoconiosis. Dr. Rosenberg determined that the miner has disabling cardiovascular disease with severe left ventricular dysfunction which is unrelated to his past coal mine employment. He concluded that the miner does not have clinical or legal pneumoconiosis and that his disability is related to his underlying heart disease.

Dr. Rasmussen and Dr. Cohen submitted supplemental reports after they reviewed Dr. Rosenberg's report. (CX 4, CX 5). Dr. Rasmussen and Dr. Cohen adhered to their prior opinions that coal mine dust is a significant contributing factor to the miner's restrictive and diffusion impairments.

Deposition Testimony

Dr. Rasmussen was deposed on December 16, 2009. (CX 2). Dr. Rasmussen has evaluated approximately 40,000 coal miners since 1962 and has published fifteen research articles on coal workers' pneumoconiosis. Id at 3-4. See Dr. Rasmussen's curriculum vitae at (DX 12). Dr. Rasmussen opined that coal mine dust exposure is a significant contributing cause of the miner's restrictive impairment together with his sternotomy and post-exercise changes. Id at 10-11. The miner also had a moderate diffusion impairment. Dr. Rasmussen noted that Dr. Cohen had observed some eventration of the left diaphragm on the CT scan but not a paralyzed diaphragm. Id at 16. Dr. Rasmussen concluded that the mild posterior eventration contributes a little bit to the restrictive impairment but would not be enough to cause this much change. Id at 16-17. Dr. Rasmussen was skeptical of Dr. Zaldivar's conclusion that the miner's ventricular dysfunction is causing his shortness of breath as the miner did not show significant signs of ventricular dysfunction on his exercise study. Id at 18-19. Dr. Rasmussen did not believe that the miner's cardiac dysfunction is contributing to his pulmonary symptoms except for his cardiomegaly. Id at 27-28.

The deposition of Dr. Cohen took place on December 23, 2009. (CX 3). Dr. Cohen is board certified in internal and pulmonary medicine, the Medical Director of for the Federally-funded Black Lung Clinics Program and the Medical Director for the black lung clinics at Stroger Hospital of Cook County. Id at 3-4. Dr. Cohen has published numerous articles on occupational lung disease and recently co-authored a published article entitled "Lung Disease Caused by Exposure to Coal Mine and Silica Dust". Id at 5-6. He stated that the miner has a moderately severe restrictive impairment with moderate to severe diffusion impairment. Id at 9. Dr. Cohen acknowledged that the miner has significant heart disease and had a heart attack and underwent bypass surgery in March 2008. Id at 10. He stated that the miner's CT scan showed a slight eventration of the left hemidiaphragm but did not show a paralyzed hemidiaphragm and that none of the physicians interpreting the CT scans found that the miner has a paralyzed left hemidiaphragm. Id at 11. The miner's cardiomegaly and minor eventration of the left hemidiaphragm contributed slightly to the miner's restrictive impairment but did not cause his diffusion impairment. Id at 12-13, 16. Dr. Cohen maintained that the miner's cardiac condition was improving and that the miner's coal mine dust exposure was damaging the gas-exchanging surface of his lungs. Id at 13-14. Dr. Cohen testified that a majority of the miner's restrictive impairment was caused by coal mine dust because his CT scan did not show paralysis of the hemidiaphragm and did not show a lot of congestive heart failure-related changes that would be expected to cause significant impairment. As the miner's FEV1 was only fifty eight percent of normal, Dr. Cohen opined that the reduction in lung function was out of proportion to what is seen on the x-ray in terms of restrictive contribution. Id at 16-17. Dr. Cohen concluded that coal mine dust exposure is the major cause of the miner's restrictive lung disease and the only cause of his diffusion impairment. Id.

Dr. Rosenberg was deposed on August 23, 2010. (EX 4). Dr. Rosenberg has advanced training in lung disease, particularly interstitial lung disease, has evaluated and treated patients with interstitial lung disease, including coal miners, for thirty years, and has a Masters degree in Public Health and Occupational Medicine. Id at 4-5. Dr. Rosenberg averred that the miner does not have clinical coal workers' pneumoconiosis because his x-rays and CT scans do not

demonstrate micronodularity, his restriction is related to extrinsic factors, i. e, his previous sternotomy, cardiomegaly, eventration of his diaphragm, and normal oxygenation. Id at 6-8. He attributed the reduction in the diffusing capacity to the miner's chronic heart disease. Id at 8. Dr. Rosenberg also ruled out legal pneumoconiosis because the miner does not have obstructive lung disease. Id. He stated that the miner has a very low ejection fraction. Id at 9, 12. Dr. Rosenberg noted that the values from the miner's pulmonary function studies are above the Department of Labor disability standards and therefore do not show that he has a totally disabling pulmonary or respiratory impairment. Id at 13. Moreover the stress test performed by Dr. Rasmussen did not show a respiratory limitation because the pO2 was 79 and the ventilatory capacity was 65liters per minute. Id at 30-31. Dr. Rosenberg testified that the miner is severely disabled from a cardiac standpoint. Id at 14. He declared that the only way in which one can determine if an individual has a paralyzed diaphragm is under fluoroscopy; CT scans cannot determine if the diaphragm is paralyzed. Id at 15-16, 27-28. Dr. Rosenberg concluded that coal mine dust exposure did not contribute to the miner's cardiac disease, restriction, or diffusion impairment. Id at 17-18.

The deposition of Dr. Zaldivar occurred on October 5, 2010. (EX 6). Dr. Zaldivar is the Director of Respiratory Therapy at Charleston Area Medical Center. Id at 8. Dr. Zalidvar stated that the miner is totally disabled by severe cardiac disease. Id at 16. There was extensive damage to his heart and he had an extremely low ejection fraction. Id at 16-17. Dr. Zaldivar stated that the miner's moderate diffusion impairment was a result of his heart disease and the small size of his lungs caused by a malfunctioning left diaphragm. Id at 24-25. The miner may have a paralyzed left diaphragm but this cannot be determined based on a CT scan. Id at 25-26. Dr. Zaldivar ascribed the miner's restriction to an enlarged heart, the abnormally high position of the diaphragm which is compressing the lungs, and the scarring of the pleura resulting from previous surgery. Id at 28-29. Coal mine dust exposure could only cause a restriction if there were physical abnormalities within the lungs which would be reflected by abnormal chest x-rays. Id at 31-32. Dr. Zaldivar maintained that there is no evidence that coal mine dust exposure is causing the restriction or shrinking of the lungs as there is no evidence of pulmonary fibrosis. Id at 32-33. The miner does not have a coal mine-induced lung disease, Dr. Zaldivar opined. Id at 33. He concluded that the miner has a disabling pulmonary impairment that is not the result of any lung dysfunction but is the consequence of heart disease and a diseased diaphragm. Id at 35-36. Dr. Zaldivar ruled out coal mine dust exposure as causing or contributing to the restriction or diffusion impairment. Id at 36.

## Conclusions of Law

Section 1556 of the "Patient Protection and Affordable Care Act of 2010" revived the 15-year presumption in Section 411(c)(4) of the Act, as implemented by § 718.305, for claims filed after January 1, 2005 and that are pending on or after March 23, 2010. Section 718.305(a) provides, as pertinent,

> If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest X-ray submitted in connection with such miner's ... claim and it is interpreted as negative with respect to the requirements of § 718.304, and if other evidence demonstrates the existence of a totally

disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis.... The presumption may be rebutted only by establishing that the miner does not... have pneumoconiosis, or that his...respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

The determination of the existence of a totally disabling respiratory or pulmonary impairment, for purposes of applying this presumption, shall be made in accordance with § 718.204. See § 718.305(c).

This claim was filed after January 1, 2005 and is presently pending. As the evidence establishes that the miner had over twenty seven years of underground coal mine employment and all the chest x-rays are negative with respect to the § 718.304 presumption, it must be determined if the miner has a totally disabling respiratory or pulmonary impairment.

Section 718.204(b)(1) provides that a miner shall be considered totally disabled if the irrebuttable presumption in § 718.304 applies. If that presumption does not apply, a miner shall be considered totally disabled if his pulmonary or respiratory impairment, standing alone, prevents him from performing his usual coal mine work and comparable and gainful work. Section 718.204(b)(2) states that in the absence of contrary probative evidence, a miner's total disability shall be established by (i) pulmonary function studies showing the values equal to or less than those in Appendix B, (ii) blood gas studies showing the values in Appendix C, (iii) the existence of cor pulmonale with right sided congestive heart failure, or (iv) the reasoned and documented opinion of a physician finding that the miner's pulmonary or respiratory impairment prevents him from engaging in his usual coal mine work and comparable and gainful work.

The presumption in § 718.304 is not applicable to this case. None of the pulmonary function or blood gas studies has produced qualifying values and there is no evidence that the miner has cor pulmonale. Dr. Rasmussen concluded that the miner lacks the pulmonary capacity to perform his usual coal mine job as an electrician which required heavy labor based on pulmonary function studies showing a moderate restrictive pulmonary impairment and a moderately reduced diffusing capacity. Dr. Cohen also concluded that the miner is incapable of performing the heavy work required in his last coal mine job from a pulmonary standpoint relying on the pulmonary function studies demonstrating a moderately severe restrictive ventilatory defect and moderate diffusion impairment. The opinions of Drs. Rasmussen and Cohen are well reasoned and documented and entitled to great weight. Dr. Zaldivar concluded that the miner has a disabling pulmonary impairment that results from his diseased heart and diseased diaphragm. Although Dr. Zaldivar found that the source of the miner's totally disabling pulmonary impairment is nonpulmonary, he nevertheless determined that the miner's pulmonary condition is totally disabling. See § 718.204(a). (If a nonpulmonary or nonrespiratory condition or disease causes a chronic respiratory or pulmonary impairment, that condition or disease shall be considered in determining whether the miner is totally disabled due to pneumoconiosis.) . Dr. Rosenberg concluded that the miner's pulmonary impairment is not disabling because the FEV1 and FVC from the pulmonary function studies are above sixty percent of predicted. His opinion is not entitled to any weight as it effectively nullifies § 718.204(b)(2)(iv) and would preclude a finding of total disability if the pulmonary function studies are nonqualifying.

Dr. Rosenberg also relied on the normal stress test administered by Dr. Rasmussen but as blood gas studies and pulmonary function studies measure different types of impairment, Dr. Rosenberg's reliance on the stress test is irrelevant. *See Tussey v. Island Creek Coal Co.*, 982 F. 2d 1036, 1040-1041 (6th Cir. 1993). After weighing the evidence I find that the miner has a totally disabling pulmonary impairment.

Pneumoconiosis is defined as a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment, and it includes both medical, or "clinical", pneumoconiosis and statutory, or "legal" pneumoconiosis. See § 718.201(a). Clinical pneumoconiosis consists of those diseases recognized by the medical community as pneumoconiosis, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment. See § 718.201(a)(1). Legal pneumoconiosis includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. See § 718.201(a)(2). A disease arising out of coal mine employment includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment. See §718.201(b). A finding of the existence of pneumoconiosis may be made based on chest x-rays, autopsies or biopsies, the presumptions in §§ 718.304, 718.305, or 718.306, and the reasoned medical opinion of a physician that the miner has pneumoconiosis as defined in § 718.201. § 718.202(a)(1)-(4). All types of relevant evidence must be weighed to determine if the miner has pneumoconiosis. *See Island Creek Coal Co. v. Compton*, 211 F. 3d 203 (4th Cir. 2000).

The evidence clearly shows that the miner does not have clinical pneumoconiosis. The chest x-rays are negative for pneumoconiosis and while Dr. Cohen, a B reader, noted scattered opacities on the September 5, 2008 CT scan, Dr. Wheeler, who is a board certified radiologist and B reader, did not detect pneumoconiosis on this CT scan. Dr. Scott, also a board certified radiologist and B reader, interpreted the April 23, 2008 CT scan as showing no evidence of coal workers' pneumoconiosis. Drs. Rasmussen, Zaldivar, and Rosenberg determined that the miner does not have clinical pneumoconiosis.

Regarding the existence of legal pneumoconiosis, Drs. Rasmussen and Cohen concluded that coal mine dust exposure made a significant contribution to the miner's restrictive lung disease and moderate diffusion impairment. Both physicians stated that the miner's CT scan showed a mild eventration of the left hemidiaphragm which made a small contribution to the miner's pulmonary condition but that there was no evidence of a paralyzed diaphragm which could account for the degree of restrictive lung disease affecting the miner. Dr. Rasmussen and Dr. Cohen are experts on occupational lung disease and have written numerous articles on occupational lung disease in general and coal workers' pneumoconiosis in particular. Dr. Cohen is also the Medical Director of the Black Lung Clinics Program and the Medical Director for the Black Lung Clinics at Stroger Hospital. Because of their expertise on coal workers' pneumoconiosis, I give great weight to their opinions.

Dr. Rosenberg stated that the miner does not have legal pneumoconiosis because he does not have obstructive lung disease which is directly contradictory to the definition of legal

pneumoconiosis in § 718.201(a)(2) which includes any chronic <u>restrictive</u> or obstructive pulmonary disease arising out of coal mine employment. (emphasis added). I therefore reject his opinion that the miner does not have legal pneumoconiosis. Dr. Zaldivar asserted that coal mine dust exposure can only cause restriction if there are abnormal chest x-rays showing pulmonary fibrosis. The existence of abnormal chest x-rays and pulmonary fibrosis relates to the diagnosis of clinical pneumoconiosis but it is irrelevant to the presence of legal pneumoconiosis. See § 718.201. Moreover, Dr. Zaldivar determined that the miner's restrictive pulmonary impairment is "very likely" the result of left diaphragmatic paralysis, noting that with coronary artery bypass surgery there is a fifteen percent incidence of damage to the phrenic nerve which in five percent of the cases will result in paralysis of the left hemidiaphragm. Dr. Zaldivar's conclusions are equivocal and I cannot accept his explanation that the miner's restrictive lung disease is attributable to the paralysis of his left hemidiaphragm considering the small chance of its occurrence. I also note that the expertise of Drs. Zaldivar and Rosenberg with respect to occupational lung disease does not compare to the expertise of Drs. Rasmussen and Cohen. The opinions of Drs. Zaldivar and Rosenberg are entitled to little weight. I therefore find that the evidence fails to show that the miner does not have legal pneumoconiosis or that his total disability did not arise out of, or in connection with, coal mine employment.

As the § 718.305 presumption has not been rebutted, I find that the miner is totally disabled due to pneumoconiosis. Because the evidence does not clearly establish an onset date of total disability due to pneumoconiosis, benefits will be awarded as of May 1, 2008, the first day of the month in which the claim was filed. § 725.503(b). The miner's counsel has thirty days to file a fully supported fee application and the employer has twenty days to respond.

ORDER

IT IS ORDERED THAT the National Union Fire Insurance Company of Pittsburgh, PA pay the miner all the benefits to which he is entitled, augmented by one dependent, beginning as of May 1, 2008.

DANIEL L. LELAND
Administrative Law Judge

**NOTICE OF APPEAL RIGHTS**: If you are dissatisfied with the administrative law judge's decision, you may file an appeal with the Benefits Review Board ("Board"). To be timely, your appeal must be filed with the Board within thirty (30) days from the date on which the administrative law judge's decision is filed with the district director's office. *See* 20 C.F.R. §§ 725.478 and 725.479. The address of the Board is: Benefits Review Board, U.S. Department of Labor, P.O. Box 37601, Washington, DC 20013-7601. Your appeal is considered filed on the date it is received in the Office of the Clerk of the Board, unless the appeal is sent by mail and the Board determines that the U.S. Postal Service postmark, or other reliable evidence establishing the mailing date, may be used. *See* 20 C.F.R. § 802.207. Once an appeal is filed, all inquiries and correspondence should be directed to the Board. After receipt of an appeal, the

)                                                )

Board will issue a notice to all parties acknowledging receipt of the appeal and advising them as to any further action needed. At the time you file an appeal with the Board, you must also send a copy of the appeal letter to Associate Solicitor, Black Lung and Longshore Legal Services, U.S. Department of Labor, 200 Constitution Ave., NW, Room N-2117, Washington, DC 20210. *See* 20 C.F.R. § 725.481. If an appeal is not timely filed with the Board, the administrative law judge's decision becomes the final order of the Secretary of Labor pursuant to 20 C.F.R. § 725.479(a).

)                                      )

## SERVICE SHEET

Case Name:  HUDSON_GARY_W_v_PINE_RIDGE_COAL_CO_D_

Case Number: **2009BLA05388**

Document Title: **DECISION AND ORDER - AWARDING BENEFITS**

I hereby certify that a copy of the above-referenced document was sent to the following this 28th
day of December, 2010:

Karen M Joyce

**KAREN M. JOYCE**
LEGAL TECHNICIAN

District Director
Chief, Branch of Claims and Systems Mgmnt
U. S. Department of Labor
Room C-3521, FPB
200 Constitution Ave., N.W.
Washington, DC 20210
            *{Hard Copy - Ground (UPS)}*

Associate Solicitor
U. S. Department of Labor
Division of Black Lung Benefits
Suite N-2117, FPB
200 Constitution Ave., N.W.
Washington, DC 20210
            *{Hard Copy - Regular Mail}*

Associate Regional Solicitor
U.S. Department of Labor
22nd Floor West
1100 Wilson Boulevard
Arlington, VA 22209
            *{Hard Copy - Certified Mail}*

Paul E Frampton, Esq.
Bowles, Rice, McDavid, Graff & Love
PO Box 1386
Charleston, WV 25325-1386
            *{Hard Copy - Certified Mail}*

Roger D Forman, Esq.
Forman & Huber
100 Capitol Street, Suite 400
Charleston, WV 25301
            *{Hard Copy - Certified Mail}*

Gary W Hudson
PO Box 84
Blooming Rose, WV 25024
            *{Hard Copy - Certified Mail}*

National Union Fire Insurance Company of Pittsbu
1300 E. 9th Street, 14th Floor
Cleveland, OH 44114
            *{Hard Copy - Certified Mail}*

Chartis Claims, Inc.
5 Wood Hollow Road
Parsippany, NJ 07054
            *{Hard Copy - Certified Mail}*

**SERVICE SHEET** continued (2009BLA05388 Case Decision)    Page: 2

Pine Ridge Coal Company
c/o Patriot Coal Corporation
12312 Olive Blvd.
St. Louis, MO 63141
       *{Hard Copy - Certified Mail}*

# EXHIBIT B

**U.S. DEPARTMENT OF LABOR**    **Employment Standards Administration**
**Office of Workers' Compensation**
**Division of Coal Mine Workers' Compensation**
**Washington, D.C. 20210**



February 8, 2011

MINER: Gary Hudson
SSN: 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 C
ROID: 0208136

Pine Ridge Coal Company
C/O National Union Fire Insurance Co.
1300 E. 9th Street, 14th Floor
Cleveland, OH 44114

Dear Sir/Ms.:

This is in further reference to the claim of Gary Hudson versus Pine Ridge Coal Company for benefits under the Black Lung Benefits Reform Act of 1977.

In accordance with the Decision and Order of Administrative Law Judge Daniel L. Leland, dated December 28, 2010, Pine Ridge Coal Company has been ordered to pay benefits to the claimant beginning May 2008. Therefore, the claimant is entitled to be paid accumulated benefits in the total amount of $30,479.10 from May 2008 through January 2011 in accordance with the enclosed schedule.

Pine Ridge Coal Company shall reimburse the Black Lung Disability Trust Fund $1,791.93 for expenses incurred and reimbursable to the Trust Fund for the cost of diagnostic medical reviews and interest, if any.

Further, Pine Ridge Coal Company shall provide benefits to the claimant beginning February 2011 at the rate of $938.30 per month and continuing under the Order of the Administrative Law Judge and according to the provisions and limitations of the Act. Enclosed is a table showing the Black Lung monthly benefit rates and a Form CM-906.

The claimant is entitled also to medical treatment benefits for this pneumoconiosis condition beginning May 2008 and continuing. With this letter, we are advising that the claimant contacted your office for establishing continuing treatment as needed for his pneumoconiosis condition at a medical facility convenient to his home. His Travel expenses to and from the facility are reimbursable at the current rate of 45 1/2 cents per mile for privately owned conveyance). This rate is subject to revision as the federal government sets the rate.

Upon commencement of payment, please forward a copy of your notification letter and the Form CM-906 to this office. Any future correspondence concerning this claim should be directed to this office.

The above named operator should send payment to the address below:

U. S. Department of Labor
Black Lung Program
P.O. Box 37227
Washington, DC 20013

So that your refund may be credited promptly and correctly, we ask that you note the miner's name, Social Security number, and the above ROID number on the refund or on any documentation that you submit with the refund.

Our Request for Reimbursement is based on information maintained in the office as of the date of this notice. It is possible that expenditures from the Trust Fund are being made concurrently. We will advise you promptly should additional information concerning such expenses become available to us.

This order becomes effective on March 8, 2011 if payment of benefits specified in this order are not made within 30 days of this effective date, interest will be due, as provided by the regulations at 20 CFR 725.608. In addition, if payment is not made within 10 days after this order becomes effective, a penalty for 20% of the total compensation awarded will be due the claimant, according to Section 14 (f) of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), as incorporated by Section 422 (a) of the Black Lung Benefits Act and 20 CFR 725.607.

## NOTICE TO CLAIMANT

Once an award has been issued, becomes effective and the operator fails to pay benefits, the claimant may apply for enforcement of any interest and/or penalty due from the operator as specified above. The 20% additional compensation is payable to the claimant by the operator even if the effective award is subsequently overturned on appeal

To apply for enforcement of interest and/or a penalty, the claimant must file suit in the federal district court for the district in which the injury occurred (typically, the district in which the miner's last coal mine employment took place). The claimant must apply within one (1) year from the date of the award, according to Section 18 (a).

The claimant is herewith advised that, if the above payment is not received within sixty (60) days from the date of this letter, they should call this office.

Sincerely,

*Tyrone A. Sutson*

TYRONE A. SUTSON
Senior Claims Examiner
Procedures and Claims Support
Branch of Standards, Regulations and Procedures
National Office, Washington, DC
202.693.0989 1.800.347.2502
(F) 202.693.1398

cc: Roger D. Foreman, Esq.
    Paul E. Frampton, Esq.
    Gary Hudson

## ACCUMULATED BENEFITS DUE CLAIMANT

| FROM | TO | NO. OF MOS. | RATE | OFFSET | TOTAL |
|---|---|---|---|---|---|
| 10/2008 | 12/2008 | 03 | $898.40 | $000.00 | $7,187.20 |
| 01/2009 | 12/2009 | 12 | $924.50 | $000.00 | $11,094.00 |
| 01/2010 | 01/2011 | 13 | $938.30 | $000.00 | $12,197.90 |
| | | | | Total | $30,479.10 |

Medical Treatment $ 1,791.93

# EXHIBIT C

**U.S. Department of Labor**

Office of Administrative Law Judges
William S. Moorhead Federal Office Building
1000 Liberty Avenue, Suite 1800
Pittsburgh, PA 15222



(412) 644-5754
(412) 644-5005 (FAX)

**Issue Date: 16 February 2011**

CASE NO.:    2009-BLA-5388

In the Matter of:

GARY HUDSON
    Claimant

    v.

PINE RIDGE COAL COMPANY
    Employer

    and

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA
    Carrier

    and

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS
    Party in Interest

## ATTORNEY FEE ORDER

On December 28, 2010, a Decision and Order – Awarding Benefits was issued by the undersigned in the above-captioned matter.  On January 18, 2011, claimant's counsel, Roger D. Forman, filed an Application for Approval of a Representative's Fee with this court in the amount of $14,150.59.  This amount represents 46.85 hours of legal work performed by Attorney Forman on behalf of the claimant between January 13, 2009 and December 30, 2010 at the rate of $250.00 per hour, for a total of $11,712.50, and requested reimbursement for expenses totaling $2,438.09.  No objections to the application for fees have been received from any party.

Although no objections have been filed to this fee petition, the undersigned notes that counsel has requested reimbursement for photocopying costs and postage expenses.  These traditional clerical duties are not properly compensable and must be included as part of overhead in setting the hourly rate.  Examples of unreimbursable expenses are local telephone calls, photocopying, postage, and typing. *Pritt v. Director, OWCP*, 9 BLR 1-159 (1986); *Marcum v.*

*Director, OWCP*, 2 BLR 1-894 (1980).  For the above-stated reasons, the request for reimbursement for these expenses is denied.

After consideration of the nature of the issues involved, the degree of skill with which the claimant was represented, the amount of work and time involved, and the level of proceedings to which the claim was raised, I conclude that the amount of $13,877.53 constitutes a reasonable amount for fees and reimbursable costs and is hereby approved.

### ORDER

IT IS ORDERED that the National Union Fire Insurance Company of Pittsburgh, PA pay The Law Office of Roger D. Forman, L.C. the amount of $13,877.53 as full satisfaction of attorney's fees and reimbursable expenses with respect to the claim in the above-captioned case.

DANIEL L. LELAND
Administrative Law Judge